HERRIN, guardian, *v.* GEORGE *et al.*

No. 10974.   JULY 3, 1936.   ADHERED TO ON HEARING, JULY 27, 1936.

*Julius McCurdy, G. B. Walker,* and *H. E. Edwards,* for plaintiff. *Augustine Sams,* for defendants.

PER CURIAM.   This was a suit in equity by Herrin as guardian of J. M. Casey, an insane person, to set aside a consent decree rendered against Casey in a former suit in equity brought in his behalf by J. H. Casey as next friend before appointment of the guardian, for the purpose of setting aside a previous judgment against him in an action at law.   In order to avoid the conclusiveness of the decree rendered in the former equity suit, it was alleged only that J. H. Casey, who purported to act as the next friend of J. M. Casey in that case, was incompetent to act in such capacity, because he "was a man who drank whiskey to excess and had drunk whiskey habitually for a number of years previous, and at the time that he was pretending to care for the interest and safeguard the welfare and interest of J. M. Casey he was wholly incapacitated to do so, for the reasons herein set out."   By an amendment it was alleged further that "at the time said equitable action was filed by said J. H. Casey as next friend . . the said Casey . . was non compos mentis and had no right or contractual capacity" to employ the attorney who instituted the action, and the attorney had no right to file the suit or appear therein as attorney.   The court sustained a general demurrer and dismissed the petition as thus amended, and Herrin as guardian excepted.

1.   Construing the allegations of the petition most strongly against the pleader, the averments in regard to the habitual inebriety of the next friend were insufficient to show that he was incapacitated at all times or at the time of the decree to represent

the plaintiff in such litigation. The same is true of the allegation that the next friend was non compos mentis at the time the suit was filed.

2. Furthermore, the equitable suit was not void; and in the absence of any averment to the contrary, it is presumed that the court duly protected the interests of the plaintiff as an insane litigant and rendered a proper judgment.

3. The court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Beck, P. J., who dissent.*

RUSSELL, Chief Justice, dissenting. The plaintiff in error challenges the correctness of the judgment of the superior court dismissing his equitable petition on general demurrer. The judgment was as follows: "Upon consideration thereof, the general demurrers of defendant as renewed to the plaintiff's petition as amended are hereby sustained, and the petition as amended is dismissed." The Supreme Court affirmed the judgment of the superior court which we have just quoted, on July 3, 1936, but a motion for a rehearing was made, and our attention was called to the fact that we had overlooked the amendment filed by the plaintiff; and in consequence of this the motion for a rehearing was granted. Upon consideration of the overlooked amendment I am of the opinion that the allegations are so vital as to present the case in an entirely different aspect from the viewpoint we occupied in our former consideration of the cause. Before the oversight was called to our attention by the motion for a rehearing, we held that the mere allegation in relation to J. H. Casey, who purported to act at one time as next friend for J. M. Casey, that he "was a man who drank whiskey to excess and had drunk whiskey habitually for a number of years previous to and at the time that he was pretending to care for the interest and safeguard the welfare and interest of J. M. Casey," and was wholly incapacitated to do so for the reasons set out, was insufficient to show that he was necessarily incompetent to act as next friend for his brother, J. M. Casey. The transcript of the record shows that this paragraph of the petition was so amended as to allege that J. H. Casey, the purported next friend, was actually non compos mentis. The amendment cured the defect pointed out by the demurrer as to the absence of an es-

sential party, as it appears that it was asked that James I. Lowry, sheriff, be made a party; and the court issued an order to that effect, and provided for service upon him by a second original.

In the amendment there are other allegations which clarify and supplement the allegations of the original petition. When the petition as amended is considered as a whole, it states a case in which J. M. Casey, the ward of his legal guardian, W. M. Herrin, is alleged to have been non compos mentis during the period of all of the transactions referred to in the petition, and incapable of making a valid contract. The per curiam opinion does not refer to the first judgment which the guardian seeks to have set aside, and which is the foundation of the litigation now instituted by Herrin, as guardian. In the amendment it is alleged that his brother, J. H. Casey, the purported next friend, in one of the adjudications, was also non compos mentis. If this be true (and by the demurrer it is admitted), all question of the bar of the statute of limitations and laches are excluded. The Code, § 20-206, so far as applicable to this case, declares: "The contract of an insane person, a lunatic or a person non compos mentis, who has never been adjudicated to be insane, or a lunatic, or of unsound mind as prescribed by the Code, is not absolutely void, but only voidable." I recognize that there is a distinction between the words "absolutely void" and the word "voidable." The meaning of the words "absolutely void" is palpably plain, but the use of the word "voidable" in the petition certainly is sufficient, and there is no reason for the dismissal of the petition in this case; certainly not in the absence of a special demurrer on the point. The word "voidable" means that which is capable of being or may be made void; and the whole purpose of this petition, as shown by it in its entirety, is to make void, or to have the court make void, the several steps by which the guardian's ward lost his land, so as to cancel all the instruments and restore the property to the ward. Under the allegations of the petition and the unanimous opinion of this court in *Warren* v. *Federal Land Bank of Columbia,* 157 *Ga.* 464 (122 S. E. 40, 33 A. L. R. 45), if a jury should find that J. M. Casey at the time, after he made the security deed to Smith, who transferred it to the plaintiff in fi. fa., the defendant in the present suit, was in fact non compos mentis, the deed would be voidable and be declared void. In the *Warren* case the court held: "The contract of an insane person

who has never been adjudged insane by any tribunal of competent jurisdiction is voidable after his death, at the instance of his heirs at law, if there be no legal representative of said insane person." If the contract of an insane person, under the circumstances of the *Warren* case, is voidable after his death, upon what principle can a different reason be applied though the insane person still lives but now has a guardian appointed in accordance with law with the right to represent his interest? Lapse of time, taking into consideration the continuance of the disability from which he has suffered, can play no part in the consideration of the question. Under the ruling in the *Warren* case, the deed in that case would have been void if thirty years had elapsed before Warren's heirs brought suit for recovery of the land. In the *Warren* case it was stated: "The deed of an insane person, though made without fraud and for an adequate consideration, may be avoided by his heirs, not only as against his immediate grantee but also as against bona fide purchasers for value and without notice of such insanity. 'The fairness of the defendant's conduct can not supply the plaintiff's want of capacity.' And 'A person whose mind is so unsound as not to have capacity to contract is incapable of making a binding conveyance.'" If that ruling of this court is sound, it would seem a fortiori to apply with greater propriety and force in a case like this, where, according to the allegations of the petition, the original note, from which this transaction proceeded, and the judgment upon it were fraudulently procured. Likewise, no judgment rendered against the persons named in the Code section is binding; and therefore the ground of the demurrer based on res judicata is futile and ineffective.

The court sustained all of the grounds of the demurrer in dismissing the petition, and in his order the judge referred to these demurrers as "general" demurrers. Had they been considered by the court as special demurrers, doubtless the petitioner would have been given an opportunity to amend, either immediately or within such time as might have been granted by the court. Some of the defects might have been cured by amendment. However, any ruling that might have been made as to specific defects in the structure of the petition are all swallowed up in the ruling upon the general demurrer. I am of the opinion that the court erred in dismissing the petition upon the general demurrer, in the light of what we have

said as to laches, the bar of the statute of limitations, and res judicata. The petition as amended asks to set aside two judgments and to cancel them as clouds on the title of J. M. Casey, the ward of W. M. Herrin, guardian, to the described lots of land. Herrin was not appointed by the ordinary as guardian until 1934. The guardian alleges that the first judgment was rendered against his ward, who, according to the allegations, was at that time non compos mentis, without his being afforded any representative provided by law for those in his condition. Neither a guardian nor a next friend. The guardian alleges that his insane ward was not even served in the suit on which the judgment was later taken against his ward; and that after the plaintiff in fi. fa., the present defendant, had bought the property at the sheriff's sale and had taken possession of it, his ward was then satisfied and lulled into security by promises that as soon as the purchaser had collected the amount which had been loaned by Smith, whose transferee he was, he would return to him the possession of the land. In this connection it is alleged that both Smith and George were acting in concert to obtain possession of the land, and that both of them knew at the time that the ward was non compos mentis. As to the second judgment which the guardian asks to be set aside, the petition as amended alleges unequivocally that J. H. Casey, the purported next friend of the ward, J. M. Casey, his brother, was non compos mentis at the time. It is further alleged that he was not competent to employ an attorney; and furthermore, that the attorney consented to the ward's case going out of court, when the petition in that case, attached as an exhibit to the present suit, does not show that it was for any reason demurrable or that it was in fact attacked by any demurrer. Counsel for J. H. Casey (the alleged next friend) agreed to consent to a decree by which the next friend, without the introduction of any testimony, surrendered every claim that J. M. Casey asserted in his petition. It is alleged that at the time this decree was rendered the defendant knew that the petitioner, then purportedly represented by the next friend, was non compos mentis, and it is inferable that the attorney was not ignorant. It may be that upon the trial of the case the guardian might not be able to establish by proof his allegations, but it must be borne in mind that we are dealing only with allegations of fact admitted by demurrer to be true, and that if the allegations of the

82

petition be proved the guardian will, in my opinion, be entitled to prevail. There are allegations of fraud in portions of the petition. Fraud depends upon intent, and the question whether the act is done with fraudulent intent is peculiarly a jury question. So I am of the opinion that the court erred in sustaining the demurrer. Presiding Justice Beck concurs in this dissent.